# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT LEE HOLLOWAY,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**<br><br>Case No. 2:17-cv-267<br><br>Judge Robert J. Shelby |

Petitioner Robert Lee Holloway was convicted in August 2014 of four counts of wire fraud and one count of making and subscribing a false tax return. He was subsequently sentenced to 225 months in prison. Holloway has now filed a Motion to Vacate, Set Aside or Correct the Sentence under 28 U.S.C. Section 2255, arguing the sentence violated the Constitution because he received ineffective assistance of counsel and was denied due process. For the reasons stated below, the motion is denied.[1]

## BACKGROUND

Holloway was convicted of wire fraud and making a false tax return in connection with an investment scheme he operated through his company, US Ventures. In the months leading up to trial, Holloway and his court-appointed attorney had frequent conflicts regarding strategy and scheduling. Holloway's attorney repeatedly stated that he believed Holloway had a mental illness that prevented him from making sound decisions, and Holloway repeatedly stated that he

---

[1] Section 2255 requires that the court hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The court finds the record in this case conclusively shows that Holloway is not entitled to relief, and therefore declines to hold a hearing.

did not believe that to be the case, did not want to undergo mental health evaluations, and did not want to rely on any mental health evidence as the basis for a defense. The disagreement on this point came to a head when Holloway, without notifying his court-appointed attorney, retained a new attorney six days before the trial was scheduled to begin. After conferring with the court and with his original and new counsel, Holloway ultimately decided to proceed to trial with only his court-appointed counsel.

During trial, the prosecution submitted evidence of more than 250 defrauded investors. Seven investors testified at trial about their investments with US Ventures and subsequent losses. The prosecution also submitted evidence and testimony from a court-appointed receiver for a related civil case against US Ventures. Holloway was convicted on all five counts.

The court at sentencing applied a guideline that enhanced the sentence in cases involving more than 250 victims and sentenced Holloway to 225 months in prison. Holloway seeks to vacate, set aside, or correct his sentence under 28 U.S.C. Section 2255 on the grounds that he received ineffective assistance of counsel for two reasons: (1) there was a "total breakdown of communications" with his attorney, and (2) his attorney failed to object to the guideline calculation based on more than 250 victims. Holloway also argues he was denied due process because the Receiver was unlawfully involved with the criminal prosecution and, as a result, the prosecution withheld evidence that would have been favorable to Holloway's defense.

**ANALYSIS**

Under Section 2255, a prisoner may move the court to vacate, set aside, or correct a sentence on one of four grounds: (1) the sentence was unlawful; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the

2

sentence is otherwise subject to a collateral attack.[2] Holloway argues the first ground applies because he was denied his Sixth Amendment right to effective assistance of counsel and because the prosecution violated his due process rights. The court will address these issues in turn.

## I. Ineffective Assistance of Counsel

Holloway argues he was denied his Sixth Amendment right to effective assistance of counsel for two reasons: (1) there was "a total breakdown of communications" between Holloway and his original trial counsel, and (2) his trial counsel overlooked a valid objection as to the number of victims, which affected the application of the sentencing enhancement.

### A. Communication breakdown

The Sixth Amendment guarantees the right to the effective assistance of counsel.[3] To prove the denial of this right, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, absent the deficient performance, the result of the proceeding would have been different.[4]

In some circumstances, "a presumption of ineffectiveness arises," and the court need not examine counsel's actual performance.[5] The Tenth Circuit has held that a "complete breakdown in communication between an attorney and client may give rise to such a presumption."[6] In deciding whether a complete breakdown in communication rendered counsel's performance ineffective, the court looks to four factors: (1) whether the defendant made a timely motion requesting new counsel, (2) whether the trial court adequately inquired into the matter, (3) whether the attorney/client conflict "was so great that it resulted in a total lack of communication

---

[2] 28 U.S.C. § 2255.
[3] *Strickland v. Washington*, 466 U.S. 668, 686 (1984).
[4] *Id.* at 687–88.
[5] *United States v. Soto Hernandez*, 849 F.2d 1325, 1328 (10th Cir. 1988).
[6] *Id.*

3

preventing an adequate defense," and (4) whether the defendant "substantially and unjustifiably contributed to the breakdown in communication."[7] Examples of complete breakdowns that result in a total lack of communication include circumstances in which the defendant "would not, *in any manner whatsoever*, communicate" with his attorney or where "the attorney/client relationship had been a stormy one with quarrels, bad language, threats and counter-threats."[8]

There is no real dispute on the first two factors, as Holloway filed a motion to retain new counsel six days before trial and the court held a hearing to discuss the motion. As to the third factor, the court concludes that there was not "a total lack of communication preventing an adequate defense."[9]

There was indeed conflict in Holloway's relationship with his attorney: Holloway provided emails between himself and counsel in which Holloway repeatedly expressed his displeasure with counsel's strategy. Holloway refused to speak with counsel on the phone and resorted only to email. Counsel urged Holloway to consider a defense based on the argument that he was suffering from a mental disorder, and Holloway repeatedly rebuffed the idea, stating that he believed counsel was "on a war path" to have Holloway "committed."[10] Emails between the two evince a tense relationship, with Holloway stating he felt "ambushed" and "humiliated" by his counsel's strategy.[11] The conflict came to a head when Holloway retained new counsel without notifying his original counsel. However, there was not a complete breakdown in communication. The record shows that Holloway's counsel replied to all of Holloway's emails within a day. Counsel disagreed with Holloway's perception of the case but discussed his

---

[7] *Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000) (citation omitted).

[8] *Soto Hernandez*, 849 F.2d at 1325 (emphasis in original) (internal quotation marks omitted).

[9] *Romero*, 215 F.3d at 1113.

[10] Dkt. 1 at 97.

[11] Dkt. 1 at 79, 97.

4

attempts to compromise on scheduling issues and reiterated his ethical obligation to respect Holloway's wishes regarding a potential mental health defense. Even after Holloway retained new counsel, Holloway and his original counsel exchanged civil emails about the change in representation, in which Holloway "sincerely thank[ed]" counsel for his help.[12] The relationship, while tense, did not dissolve into a total communication breakdown. Holloway has thus failed to meet the third factor of the "complete breakdown" test.

Finally, there is evidence that Holloway substantially and unjustifiably contributed to any breakdown in communication by initially refusing to work with his counsel or the prosecution on scheduling issues. Taking all four factors together, the court concludes that Holloway did not receive ineffective assistance of counsel as the result of a communication breakdown.

### B. Sentencing enhancement

Holloway also argues his Sixth Amendment right was violated because his counsel erred in not objecting to the sentencing enhancement based on the number of victims.

As with Holloway's first Sixth Amendment argument, he must show both that his counsel's performance was constitutionally deficient and that the error prejudiced him.[13] An attorney's failure to challenge a sentencing enhancement may constitute deficient performance under *Strickland*.[14] But such an error is not always prejudicial.[15]

In this case, the court applied U.S.S.G. Section 2B1.1(b)(2)(C), which at the time provided for a sentencing enhancement where a crime involves more than 250 victims.[16] The

---

[12] Dkt. 1 at 104.

[13] *Strickland*, 466 U.S. at 687–88.

[14] *See United States v. Kissick*, 69 F.3d 1048, 1055 (10th Cir. 1995).

[15] *Id.* (citing cases in which attorney's failure to argue for potential reduction in defendant's sentence was not prejudicial).

[16] This section was amended in 2015.

5

presentence investigation report stated that there were over 290 victims. Holloway contends there was no evidence presented at trial showing that each of the purported victims actually suffered a loss. Rather, Holloway argues, the only evidence of loss came from seven witnesses at trial and thus the sentencing enhancement should have been based on U.S.S.G. Section 2B1.1(b)(2)(A), which addresses crimes involving fewer than ten victims.[17]

Regardless of whether Holloway's counsel erred in not objecting on this basis, Holloway has not shown that the error was prejudicial. The prosecution presented evidence of more than 250 investors in US Ventures, "close to a hundred" investors in US Ventures International, and 24 investors in another group involved with Holloway—much more than are needed to meet the requirement of U.S.S.G. Section 2B1.1(b)(2)(C). Holloway argues that some investors did not suffer actual loss, but he points to no evidence regarding how many investors should not be considered victims. Without this evidence, the court cannot say that "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."[18] Thus, Holloway has not shown that his attorney's failure to object to the number of victims constituted ineffective assistance of counsel.

## II.     Due Process

Holloway argues the prosecution violated his right to due process because it suppressed evidence from the court-appointed Receiver that was material to Holloway's criminal case. To remedy this alleged error, Holloway asks the court to order the prosecution to produce the entire record regarding the Receiver's duties in the related civil case.

Under *Brady v. Maryland*, a defendant's due process rights are violated where the prosecution suppresses evidence that is favorable to the defendant and "material either to guilt or

---

[17] This section was amended in 2015.

[18] *Strickland*, 466 U.S. at 696.

6

to punishment."[19] To establish a *Brady* violation, the defendant bears the burden of proving three factors: "(1) that the prosecution suppressed the evidence, (2) that the evidence was favorable to the accused, and (3) that the evidence was material."[20]

Holloway alleges the Receiver inappropriately participated in the DOJ investigation and that the prosecutor relied on information from the Receiver but then failed to make that information available to Holloway. The prosecution, in two separate letters to Holloway's attorney, denied these allegations, stating that the Receiver conducted a separate investigation and did not participate in any of the prosecution team's decisions. The prosecution also stated that it did receive some information from the Receiver but that it produced all of that information in criminal discovery.

Holloway focuses on the first prong of the *Brady* test, arguing that because the Receiver "participated in the investigation . . . by providing information to the government," his knowledge of possibly exculpatory evidence can be imputed to the prosecutor.[21] However, Holloway concedes, "a receiver is not part of the executive branch, but, instead, is appointed as an officer of the court to prevent the dissipation of assets."[22] The court concludes the Receiver, as an officer of the court, was not part of the prosecution team.[23]

---

[19] 373 U.S. 83, 87 (1963).

[20] *United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998) (citation omitted).

[21] Dkt. 1 at 46.

[22] Dkt. 1 at 10.

[23] *See United States v. Feathers*, No. 14-CR-00531-LHK, 2016 WL 7337518, at *16 (N.D. Cal. Dec. 19, 2016), *reconsideration denied*, No. 14-CR-00531-LHK-1, 2017 WL 783947 (N.D. Cal. Mar. 1, 2017) ("[T]he Receiver and the Receiver's attorneys are not 'involv[ed] in the investigation' in a manner that places the Receiver's and the Receiver's attorneys' records in the U.S. Attorney's Office's possession, custody, or control.") (alteration in original).

In any case, Holloway has not met his burden on the second and third prongs. Holloway concedes that he "can only offer conjecture" as to whether the material from the Receiver was favorable to him or material to his defense. Mere speculation that the material would be favorable and material is insufficient for a *Brady* claim.[24] Thus, Holloway has not met his burden of showing a due process violation.

## CONCLUSION

Because the court concludes Holloway has not shown a violation of his right to effective assistance of counsel or of his right to due process, his Motion to Vacate, Set Aside or Correct Sentence[25] is DENIED. The Clerk of Court is ordered to close the case.

**SO ORDERED** this 16th day of April, 2018.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[24] *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1117 (10th Cir. 2011); *see also Godlock v. Fatkin*, 84 F. App'x 24, 29 (10th Cir. 2003).

[25] Dkt. 1.